UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| ADA CARMONA ELIZONDO, § <br> Plaintiff, § <br> § <br> v. § <br> § CIVIL ACTION NO. 7:17-cv-00036 <br> GREAT LAKES REINSURANCE § <br> (U.K.) SE FORMERLY KNOWN AS § <br> GREAT LAKES REINSURANCE § <br> (U.K.) and JOSE LOPEZ § <br> Defendant. § | |

## NOTICE OF REMOVAL

Defendant, Great Lakes Insurance SE (formerly known as Great Lakes Reinsurance (UK) SE) ("Great Lakes"), with a full reservation of rights, hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

### I.   BACKGROUND

1. On October 20, 2016, Plaintiff Ada Carmona Elizondo ("Plaintiff") filed this action in the 430th Judicial District Court of Hidalgo County, Texas, bearing Docket Number C-4781-16-J (the "State Court Action") against Great Lakes and Jose Lopez ("Lopez"). Plaintiff's Original Petition (the "Complaint"), filed on October 20, 2016 is the live pleading in this case. (A copy of the Complaint is attached hereto in accordance with 28 U.S.C. § 1446(a) as **Exhibit C-2**.

2. Great Lakes was served on January 3, 2017. Thus, this Notice of Removal of the case to the United States District Court is timely filed by Great Lakes, it being filed no more than thirty (30) days after service of the Complaint on Great Lakes, in accordance with 28 U.S.C. §§ 1441 and 1446.

### II.   BASIS FOR REMOVAL: DIVERSITY JURISDICTION

3. Removal of the state court action to this Court is proper pursuant to 28 U.S.C. §§ 1332 and 1441(a) and (b) because: (1) there is complete diversity between Plaintiff and Great Lakes, excluding the improperly joined defendant, Lopez, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

**A.     Complete Diversity Exists.**

4. Plaintiff's state court action may be removed to this Court because it arises under 28 U.S.C. § 1332.

5. Plaintiff alleges in the Complaint that she resides in Hidalgo County, Texas; therefore, she is a citizen of Texas.[1]

6. Defendant Great Lakes is a foreign non-admitted surplus lines insurer engaged in the business of insurance in the State of Texas, and is incorporated and has its principal place of business in the United Kingdom; therefore, Great Lakes is a citizen of the United Kingdom.

7. In an attempt to defeat diversity jurisdiction, Plaintiff also named Lopez as a defendant.[2] Lopez is an individual and citizen of the state of Texas. As shown below, however, the Court should disregard Lopez's citizenship because Lopez was improperly joined as a defendant by Plaintiff solely in an attempt to defeat federal jurisdiction.

8. Consent to or joinder in this removal by Lopez is unnecessary because Lopez has been improperly joined.[3] However, Lopez is also represented by undersigned counsel and consents to this removal.

9. Thus, there is complete diversity of citizenship between Plaintiff and the properly joined defendant, Great Lakes.

---

[1]     *See* Complaint, at 2.

[2]     *See* Complaint, at 2.

[3]     *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

**B.     Lopez was improperly joined.**

  *i.     Applicable standard for improper joinder.*

10.     The removing party bears the burden of showing that federal jurisdiction exists and that removal is proper.[4] Under Section 1441(b), while complete diversity of citizenship must exist between all plaintiffs and all defendants to establish federal subject matter jurisdiction, only the citizenship of *properly* joined parties can establish federal subject matter jurisdiction.[5] The doctrine of improper joinder "prevents defeat of federal removal jurisdiction premised on diversity jurisdiction by an improperly joined, non-diverse defendant."[6] Citizenship of an improperly joined defendant is disregarded entirely in determining whether complete diversity exists.[7] "Normally, a court reviewing allegations of fraudulent joinder should refrain from conducting an evidentiary hearing but may utilize a summary judgment-like procedure."[8] "A defendant may submit and the court may consider affidavits and deposition transcripts in support of the defendant's removal petition."[9]

11.     "Fraudulent joinder is established when the removing party meets the heavy burden of showing [either] (1) there was actual fraud in pleading the jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant under state law."[10]

---

[4]     *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[5]     *See* 28 U.S.C. § 1441(b); *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

[6]     *Borden v. Allstate Inc. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).

[7]     *Smallwood*, 385 F.3d at 572.

[8]     *Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir. 2000) (citing *Burchett v. Cargill*, 48 F.3d 173, 176 (5th Cir. 1995)).

[9]     *TAJ Properties, LLC v. GAB Robins North America, Inc.*, 2011 WL 2162321, at *2 (S.D. Tex. 2011) (citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)).

[10]    *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004); *Cantor v. Wachovia Mortg., FSB*, 641 F.Supp.2d 602, 606 (N.D. Tex. 2009); *Rodriguez v. Casa Chapa S.A. de C.V.*, 394 F.Supp.2d 901, 905 (W.D. Tex. 2005).

12. In order to establish the second ground for improper joinder, the removing party bears the burden of proving that there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[11] "This possibility [of recovery], however, must be reasonable, not merely theoretical."[12] "[W]hether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated different means there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant"[13] Courts undergo a 12(b)(6) style analysis to determine whether a plaintiff can establish a cause of action against the non-diverse defendant.[14]

> ### ii. There is no reasonable basis for the Court to predict that Plaintiff might be able to recover against Lopez; therefore, Lopez was improperly joined.
>
> *(a) Plaintiff Cannot Recover for the Causes of Action Alleged Against Lopez*

13. Plaintiff has asserted that Lopez's actions were not in compliance with the Texas Insurance Code, specifically, § 542 of the Texas Insurance Code.[15] There is no reasonable basis to predict that Plaintiff can recover on her claims against Lopez under the Texas Insurance Code. Therefore, the adjuster has been improperly joined.

> (1) <u>Plaintiff's Claims under §542 of the Texas Insurance Code Fail as a Matter of Law.</u>

---

[11] *Smallwood*, 385 F.3d at 572.

[12] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (emphasis added).

[13] *Smallwood*, 385 F.3d at 573.

[14] *Id.* at 572.

[15] Complaint, at 8.

14. The Prompt Payment of Claims Act under Section 542 of the Texas Insurance Code specifically limits recovery for violations of this section to insurers.[16] Lopez is not an insurer as defined by the Texas Insurance Code, but an adjuster. Therefore, he cannot be held liable for violations of this act.[17] Because Lopez cannot be held liable under § 542.060 of the Texas Insurance Code, there is no reasonable basis to believe that Plaintiff will be able to recover on this claim.[18]

(2) <u>Plaintiff Cannot Recover on her Unfair Insurance Practice Claims</u>

15. To the extent that Plaintiff pleads Unfair Insurance Practice Claims against Lopez, there is no reasonable basis to predict that Plaintiff can recover on these claims because (a) Plaintiff has not made any factual allegations that Lopez misrepresented specific terms of the policy and (b) Great Lakes has not given Lopez settlement or payoff authority.

16. In *Messersmith v. Nationwide Mut. Fire Ins. Co.*, the Northern District stated that a misrepresentation under Texas Insurance Code § 541.060(a)(1) "must be about the details of a policy, not the facts giving rise to a claim for coverage. [The adjuster] would have had to represent that [the insured] "would receive a particular kind of policy that it did not receive" or "denied coverage against a loss under specific circumstances that it previously had represented would be covered."[19]

17. Plaintiff's allegations are nearly identical to the allegations made in *Messersmith*. In *Messersmith*, the plaintiff alleged "that there was no damage to [the insured's] roof when in

---

[16] Tex. Ins. Code § 542.060(a).

[17] *Messersmith*, 10 F. Supp. 3d at 723–24 ("[T]he Prompt Payment of Claims Act applies only to insurers. *See* Tex. Ins. Code § 542.060(a) (limiting the relevant law to insurers). [The adjuster] is not an insurer so she cannot be held liable under it.").

[18] *See id.*

[19] *Messersmith*, 10 F. Supp. 3d at 724 (quoting *U.S. Fire Ins. Co. v. Confederate Air Force*, 16 F.3d 88, 91 (5th Cir. 1994) (citing *Parkins v. Tex. Farmers Ins. Co.*, 645 S.W.2d 775, 776–77(Tex. 1983))).

fact there was damage" and "that the damage was only cosmetic in nature when in fact there was leaking resulting from the damage."[20] The Northern District found that these allegations did not give rise to a claim.[21] The allegations in this case are no different.

18. Plaintiff alleges in her complaint that "[d]uring the inspection, ADJUSTER DEFENDANT ignored covered damages to the Property and refused to address all of the damages caused by the loss. Specifically, Lopez, ignored covered damages including but not limited to the main house roof, fascia, soffit, and dining room. Subsequent to the inspection, ADJUSTER DEFENDANT prepared a repair estimate, completed on or about October 21, 2015, which vastly under-scoped the actual covered damages to the property, thus demonstrating ADJUSTER DEFENDANT did not conduct a thorough investigation of the claim."[22] On the face of these allegations, even assuming them to be true, there is no reasonable basis to predict that Plaintiff can recover for her unfair insurance practice claim for misrepresentation against Lopez.

19. Plaintiff additionally alleges that Lopez "misrepresent[ed] one or more material facts and/or policy provisions relating to coverage;" "fail[ed] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;" "fail[ed] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under one portion of a policy with respect to which liability has become reasonably clear in order to influence Plaintiff to settle the claim with respect to another portion of the policy;" "fail[ed] to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims;" "refus[ed] to affirm or deny coverage within a

---

[20] *Messersmith*, 10 F. Supp. 3d at 724 (quotation marks removed).

[21] *Id.*

[22] Complaint, at 9.

reasonable time;" "refus[ed] to conduct a reasonable investigation;" "ignor[ed] damage known to be covered by the Policy;" and "conduct[ed] an outcome-oriented investigation in order to provide INSURANCE DEFENDANT with a basis to underpay the claim."[23] The only "fact" provided in support of these claims is Lopez's damage estimate from his inspection of the property.[24] That is not enough to state a claim for unfair insurance practice under the Code.

20. Plaintiff cannot be held liable under these provisions of the Insurance Code because Lopez does not have settlement or payoff authority from Great Lakes as an adjuster.[25] Lopez merely investigated the claim at issue and provided an estimate of the damage to Great Lakes.[26] Any decisions with regard to settlement or payoff are made by the carrier, not by Lopez. Therefore, there is no reasonable basis to believe that Plaintiff can prevail on her unfair insurance practice claim(s) against Lopez with respect to settlement and payoff of Plaintiff's claim.[27]

21. Therefore, because Plaintiff cannot maintain her claim that Lopez misrepresented any term of the policy, and because Lopez lacks the authority to settle or pay an insurance claim of Plaintiff, there is no reasonable basis to predict that Plaintiff can prevail on her Unfair Insurance Practice Claim against Lopez.

(3) Plaintiff Cannot Sustain a Cause of Action for Fraud Against Lopez.

22. To the extent that Plaintiff alleges a cause of action for Fraud against Lopez, Plaintiff cannot sustain this cause of action.

---

[23]   Complaint, at 8–9.

[24]   *See id.* at 8–10.

[25]   *See* Declaration of Jose Lopez, attached as Exhibit E.

[26]   *Id.*

[27]   *See Messersmith*, 10 F. Supp. 3d at 724–25 (noting that the adjuster cannot be held liable for failing to settle or pay an insurance claim because an adjuster lacks the authority to settle or pay an insurance claim).

23. In order to successfully sustain a claim a for fraud, a plaintiff must show that the defendant (a) made a representation to the plaintiff; (b) the representation was material; (c) the representation was false; (d) when the representation was made, the defendant knew the representation was false or made the representation with reckless disregard for its truth; (e) the defendant made the representation with the intent that the plaintiff act on the representation; (f) the plaintiff relied on the representation; and (g) the representation caused injury to the plaintiff.[28]

24. In this case, the only act that Plaintiff alleges that she made is to purchase insurance from Great Lakes. Additionally, Plaintiff does not allege that Lopez was involved in the sale of the insurance policy at issue to Plaintiff or the sale of any insurance policy to Plaintiff.

25. Because Plaintiff has not established, and cannot establish, the elements necessary for a fraud claim against Lopez, there is no reasonable basis to predict that Plaintiff can prevail on this claim against Lopez.

> (b) *Plaintiff's Petition Merely Tracks the Language of the Texas Insurance Code and Fails to Allege any Facts upon which Plaintiff may recover against Lopez.*

26. District Courts in Texas have consistently held that "mere tracking of the vague language of the statutes fail to state a reasonable basis for predicting that the Texas Insurance Code would allow recovery against the in-state adjuster."[29] All of Plaintiff's "allegations" against Lopez merely track the language of the applicable statute or elements of the common-law cause of action. Plaintiff's conclusory and baseless statements regarding Lopez fail to provide a

---

[28] *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011).

[29] *TAJ Properties, LLC v. GAB Robins North America, Inc.*, 2011 WL 2162321, at *2 (S.D. Tex. 2011) (holding the plaintiffs' mere tracking of the vague language of the statutes fail to state a reasonable basis for predicting that the Texas Insurance Code would allow recovery against the in-state adjuster).

reasonable basis for the Court to predict that Plaintiff might be able to recover against Lopez; therefore, Lopez was improperly joined.

27. The Northern District of Texas determined that an in-state adjuster had been improperly joined in a case with pleadings almost identical to the Complaint in this case.[30] In *Weldon Contractors, Ltd.*, the plaintiff alleged the adjuster was assigned to adjust the claim, hired to inspect the property, and hired to determine the extent of damage caused by a hail storm.[31] The plaintiff also alleged that the adjuster failed to assess the damage on all of the premises which sustained wind and hail damage, failed to properly inspect the buildings to assess the full extent of the damage, and failed to meet the guidelines as promulgated by Texas law in the evaluation, adjusting and coverage of the plaintiff's claim.[32] The court held that "[t]hese allegations are really legal conclusions couched as factual allegations, with no factual support in the petition."[33] The court further stated, "[f]or example, nowhere in the petition does plaintiff allege that [the adjuster] made any representations or misrepresentations to [Plaintiff] of any kind, except the conclusory assertion[s]."[34] Regarding the plaintiff's allegations that the adjuster violated the Texas Insurance Code, the court held that the plaintiff simply restated the provisions of the Texas Insurance Code and failed to allege any facts showing that the adjuster actually performed any act that could be construed as a violation of the Texas Insurance Code.[35] Based

---

[30] *See Weldon Contractors, Ltd. v. Fireman's Fund Ins. Co.*, 2009 WL 1437837, *2–3 (N.D. Tex. 2009).
[31] *Id.* at *3.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*

on these findings, the court denied the plaintiff's motion to remand and determined that the adjuster was improperly joined.[36]

28. Plaintiff's allegations against Lopez are nearly identical to the allegations in *Weldon Contractors, Ltd.* Here, Plaintiff alleges that "[t]he INSURANCE DEFENDANT assigned the loss and the claim to JOSE LOPEZ who was at all pertinent times the agent of the INSURANCE DEFENDANT . . . . ADJUSTER DEFENDANT inspected Plaintiff's property on or about October 20, 2015. During the inspection, ADJUSTER DEFENDANT was tasked with the responsibility of conducting a thorough and reasonable investigation of Plaintiff's claim, including determine the cause of and then quantifying all of the damage done to Plaintiff's property."[37] Plaintiff further alleges that "[d]espite having been assigned the claim, and despite being given authority and instructions to inspect, adjust and evaluate the claim, the ADJUSTER DEFENDANT failed and refused to properly adjust the claim. The ADJUSTER DEFENDANT failed to properly inspect the property and damages, failed to request information, failed to adequately investigate the claim, failed to respond to requests for information from the Plaintiff, failed to timely evaluate the claim, failed to timely and properly estimate the claim, and failed to timely and properly report to the INSURANCE DEFENDANT and make recommendations to the INSURANCE DEFENDANT to address all covered damages."[38] The remainder of Plaintiff's allegations against Lopez merely track the language of the Texas Insurance Code. For example, Plaintiff's Petition tracks section 541.060(a)(1) of the Texas Insurance Code and allege Lopez "misrepresent[ed] one or more material facts and/or policy provisions relating to

---

[36] *Id.*

[37] Complaint, at 9.

[38] *Id.*

coverage," without any actual facts to support the allegations.[39] Even if the Court takes Plaintiff's statements regarding Lopez as true, Plaintiff's allegations are nothing more than "legal conclusions couched as factual allegations, with no factual support in the petition."[40] As the court held in *Weldon Contractors, Ltd.*, these types of conclusory statements without actual factual support are not enough to provide a reasonable basis for the Court to predict that Plaintiff might be able to recover against Lopez.

29. Although Plaintiff's allegations against Lopez are deficient on their face, this Court may also pierce the pleadings and consider evidence further demonstrating the improper nature of Lopez's joinder to this action. In *Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins. Co.*, the Southern District held that an in-state adjuster was improperly joined after the court reviewed the pleadings and the evidence submitted by the adjuster with the removal. Notably, the Court held that the affidavit submitted by the adjuster established that the adjuster had not committed any wrongdoing, and that plaintiffs had therefore failed to state a claim against him:

> As an initial inquiry, the court must ask whether it appears from the Original Petition that the plaintiff actually intended to sue the non-diverse defendant, i.e., whether "the record ... support[s] any inference that the [plaintiff] intended to actively pursue claims" against [the adjuster]. Factors for the Court to consider include whether the defendant is merely minimally mentioned, whether he was ever served, and whether any actionable claims are specifically alleged against him. [The adjuster] is identified in the Original Petition by name, and he was served. Specified paragraphs in the petition are directed to him, but for the most part they merely track the statutory provisions, alleging only that [the adjuster] inspected the Property and that he submitted an undervalued repair estimate to [the insurer]. These actions can be accomplished by [the insurer] through an agent, and as such, are indistinguishable from [the insurer]'s actions. When the Court pierces the pleadings, the evidence submitted in [the adjuster]'s affidavit, which states his work "was limited to inspecting the insured property and providing the carrier with a repair estimate," demonstrates that his work did satisfy the statutory and case law definitions of an adjuster, but it does not, apart from the conclusory allegations that his estimate was "undervalued," allege he did

---

[39] Complaint, at 8.

[40] *See Weldon Contractors, Ltd.*, 2009 WL 1437837, at *3.

anything to make a case against him. No specific misrepresentation by [the adjuster] to Plaintiff is pleaded, and the fraud claim has no foundation. Plaintiff's conclusory claim against [the adjuster], individually, for insufficient investigation and undervaluing the claim, incorporated into a report to [the insurer], is insufficient to establish the possibility of a claim against him individually for violation of the Texas Insurance Code § 541.060(a), the DTPA, Business & Commerce Code §§ 17.41 et seq., and common law fraud.[41]

30. Thus, even if the Court determines that it is necessary to pierce the pleadings and conduct a summary judgment analysis to determine whether Lopez was improperly joined, as the Southern District did in *Centro Cristiano Cosecha Final, Inc.*, the actual facts of this case – which Plaintiff cannot legitimately dispute – establish that Plaintiff's contentions regarding Lopez in the Complaint are simply not actionable.[42] Accordingly, Plaintiff has failed to allege a viable cause of action against Lopez, and Lopez's citizenship should be disregarded for purposes of determining diversity jurisdiction.

## C. Amount in Controversy Exceeds $75,000.

31. Plaintiff has plead that she is seeking "monetary relief, the maximum of which does not exceed $75,000."[43] Plaintiff's amount in controversy pleading is in bad faith and the actual amount in controversy for this dispute exceeds $75,000. Therefore, the amount in controversy requirement set out in 28 U.S.C. § 1332 has been met and this Court has jurisdiction over this matter.

32. In general "the sum demanded in <u>good faith</u> in the initial pleading shall be deemed to be the amount in controversy."[44] If, however, state court pleading standards do not

---

[41] *Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins. Co.*, 2011 WL 240335, at *14 (S.D. Tex. Jan. 20, 2011).

[42] *See id.*

[43] *See* Complaint, at 14.

[44] *Bazan v. State State Farm Lloyds*, 2016 WL 3397643, *1 (S.D. Tex. June 21, 2016).

allow a demand for a specific sum, as in Texas, the removing party can establish that removal is proper by a preponderance of the evidence either by "(1) showing it is apparent from the claims of the petition that the claims are likely to exceed $75,000 or (2) setting forth summary judgment-type evidence of facts in controversy that support a finding of the requisite amount."[45] "The test is whether it is more likely than not the amount of the claim will exceed [$75,000]."[46]

33. Pleadings that do not comport with state court pleading requirements are considered to be in "bad faith" and therefore cannot establish the amount in controversy.[47] As the Southern District of Texas stated in *Bazan v. State Farm Lloyds*,

> First, as previously noted, a plaintiff's pleading for a specific sum in good faith must be deemed the amount in controversy. However, this request does not control when made in bad faith or when state practice does not permit demand for a specific sum. In Texas, the law does not permit a plaintiff to plead for a specific amount. Rather, Rule 47 requires a pleading to contain a statement that the damages sought are within the jurisdictional limits of the court, and a statement that the party seeks a pre-defined range of damages. Here, Plaintiff does not include the range required by Rule 47(c)(1)–(5). Thus, a specific demand such as Plaintiff's cannot be deemed the amount in controversy because "[s]uch manipulation is surely characterized as bad faith." These considerations inform the court that instead of pleading a legitimate estimation of damages in this case, "[a]s a functional matter, [Plaintiff is] attempting to avoid federal jurisdiction." Thus, Plaintiff's specific sum does not control the Court's analysis.[48]

34. In determining the amount in controversy, the court considers a variety of types of evidence. Further, a post-removal stipulation of damages is of no consequence. Post-removal

---

[45] *Id.*

[46] *Noyola v. State Farm Lloyds*, 2013 WL 3353964, at *2 (S.D. Tex. July 3, 2013).

[47] *Bazan,* 2016 WL 3397643, at *2.

[48] *Id.*

filings are only to be considered if the basis for removal is ambiguous.[49] In this case, the basis for removal is not ambiguous.

35. Under Texas law, an award of exemplary damages in a bad-faith insurance claim, such as this one, can result in a damage increase up to $200,000.[50] While a statutory cap alone is insufficient in and of itself to establish that jurisdictional limits have been met, it is one element to be considered.[51]

36. The amount in controversy can further be determined by looking to the value of the claim or any pre-suit demand letter. In making this determination, courts have looked to the policy limits of the insurance policy at issue to assess the amount in controversy.[52]

37. In the present case, Plaintiff has only plead that she is seeking "monetary relief, the maximum of which does not exceed $75,000."[53] Plaintiff's pleadings do not comply with the Texas pleading standards requiring Plaintiff to plead in a jurisdictional range of damages.[54] As such, Plaintiff's allegation that her damages do not exceed $75,000 is in "bad faith" and should

---

[49] *See Cantu v. Allstate Vehicle and Property Insurance Co.*, 2016 WL 1695284, at *2 (S.D. Tex. April 28, 2016) ("[P]ost-removal filings may oly be considered in determining the amount in controversy "if the basis for jurisdiction is ambiguous at the time of removal."") (quoting *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)).

[50] *See* Tex. Civ. Prac. & Rem. Code § 41.008(b) ("Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of: (1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000.").

[51] *See Garcia v. Kellogg USA, Inc.* 2013 WL 4735169, at *2 footnote 26 (S.D. Tex. Sept. 3, 2013) ("[The] statutory cap alone would be insufficient to meet Defendant's burden. Defendant must do more than "point to a state law that *might* allow the plaintiff to recover more than what is pled.") (quoting *White v. FCI*, 319 F.3d 672, 675 (5th Cir. 2003) (quotation marks removed).

[52] *See Noyola*, 2013 WL 3353963, at *3.

[53] Complaint, at 14.

[54] *See Cantu*, 2016 WL 1695284; *Garcia*, 2013 WL 4735169; *Noyola*, 2013 WL 3353963; *Bazan*, 2016 WL 3397643.

not be accepted for purposes of establishing whether the amount in controversy is greater than $75,000.[55]

38. Based on the evidence to date in this case, particularly Plaintiff's own pleadings, it is more likely than not that the amount in controversy is greater than $75,000, meeting the minimum jurisdictional threshold required for diversity jurisdiction. One of Plaintiff's many causes of action is a breach of contract claim against Great Lakes. Plaintiff has not plead the specific amount she is seeking for her breach of contract claim, nor has Plaintiff included an estimate with her Complaint establishing what actual damages she is seeking.[56] Because Plaintiff has not limited the actual damages she seeks on her breach of contract claim, this claim "implicates the limits of the policy which forms the basis of the claim."[57] In this case, the policy limits are $200,000.[58] Therefore, the amount in controversy is $200,000, and the jurisdictional threshold has been met.

39. Further, as previously discussed, Plaintiff is seeking exemplary damages , another factor to assess when determining whether the jurisdictional threshold has been met.[59] Under Tex. Civ. Prac. & Rem. Code § 41.008, Plaintiff can receive up to $200,000 in an exemplary damage award if she is successful.[60] Therefore, this possibility of additional recovery up to

---

[55] *Id.*

[56] *See* Complaint, at 6.

[57] *Noyola*, 2013 WL 3353963, at *3.

[58] *See* Ada Elizondo Insurance Policy declaration pages for Great Lakes Reinsurance (UK) SE Policy No. GP 15310736398, attached as Exhibit F-1.

[59] *See Bazan*, 2016 WL 3397643, at *3.

[60] *See* Tex. Civ. Prac. & Rem. Code § 41.008(b).

$200,000 taken in conjunction with a breach of contract claim implicating the limits of the policy at issue, the amount in controversy requirement has been met.

40. While Plaintiff alleges that the amount in controversy is less than $75,000, Plaintiff also pleads that "Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery."[61] As in *Garcia v. Kellogg USA, Inc.*, the Court should again look to this factor in assessing whether it is more likely than not that the amount in controversy jurisdictional threshold has been met. In *Garcia*, the Southern District denied the plaintiff's Motion to Remand based on the Plaintiff's pleading that he intended to conduct discovery under a level three discovery control plan in conjunction with the fact that the plaintiff's actual damages were increasing over time.[62] In denying the plaintiff's Motion to Remand, the Southern District found that it was more likely than not that the amount in controversy exceeded the jurisdictional threshold required for diversity jurisdiction.[63]

41. This case is substantially similar to the one presented to the Southern District of Texas in *Noyola*, where the Court admonished the Plaintiff, stating,

> At this point, the Court emphasizes the glaring absence of any damages-estimate by Noyola. In determining where the amount in controversy falls within the policy-limits range, the Court notes that neither party has submitted a demand letter or an estimate by Noyola. Combined with Noyola's vague, jurisdictionally-sensitive pleading of damages in his state-court petition, this apparent avoidance of any affirmative statement of damages *reeks of the "abusive manipulation" rejected by the De Aguilar II Court, a hide-the-ball chicanery that is the type of "tactical manipulation" which the Fifth Circuit previously cautioned "cannot be condoned."*[64]

---

[61] *See* Complaint, at 1.

[62] *See Garcia*, 2013 WL 4735169, at *2.

[63] *See id.*

[64] *See Noyola*, 2013 WL 3353963, at *4 (quoting *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995)).

42. Therefore, the amount in controversy has been met because: (1) Plaintiff's bad faith pleading of the amount in controversy is an attempt to avoid federal jurisdiction; (2) Plaintiff's breach of contract claims implicate the limits of the insurance policy at issue, $200,000; (3) Plaintiff seeks exemplary damages with a statutory cap of $200,000; and (4) Plaintiff alleges that this is a complex matter requiring a level 3 discovery control plan under the Texas Rules of Civil Procedure. Based on the foregoing, it is more likely than not that the amount in controversy exceeds $75,000, therefore, the jurisdictional threshold has been met.

### III.   VENUE

43. Venue for removal is proper in this district and division under 28 U.S.C. § 1441(a) because this district and division embrace the 430th Judicial District Court of Hidalgo County, Texas, the forum in which the removed action was pending.

### IV.   ADDITIONAL REQUIREMENTS

44. Great Lakes has provided notice to Plaintiff through delivery of a copy of this Notice and the state court Notice of Filing of Notice of Removal to Plaintiff's counsel of record, and has also provided notice to the Clerk of Court for the 430th District Court of Hidalgo County, Texas through the filing of this Notice and the Notice of Filing of Notice of Removal into the record of the state court action.

45. Copies of all pleadings, process, orders, request for trial by jury, and other filings in the state-court suit are attached to this notice as required by 28 U.S.C. § 1446(a).[65]

46. Pursuant to Federal Rule of Civil Procedure 81 and 28 U.S.C. § 1446(a), this Notice of Removal is accompanied by copies of the following:

---

[65] *See* **Exhibit C**: Index of All Documents Filed in State Court Action.

| | |
|---|---|
| **Exhibit A**: | Listing of All Parties and Counsel of Record; |
| **Exhibit B**: | Civil Cover Sheet; |
| **Exhibit C**: | Index of All Documents Filed in State Court Action; |
| **Exhibits C-1–C-5**: | Copies of all filings in State Court Action and State Court Docket Sheet; |
| **Exhibit D**: | List of Action Being Removed; |
| **Exhibit E:** | Declaration of Jose Lopez; |
| **Exhibit F:** | Business Records Affidavit of Lisa Carroll; |
| **Exhibit F-1:** | Certificate of Insurance for Ada Elizondo's Insurance Policy issued by Great Lakes Insurance SE, Policy No. GP 15310736398. |

WHEREFORE, Defendant, Great Lakes Insurance SE (formerly known as Great Lakes Reinsurance (UK) SE), prays that this matter be removed to the United States District Court for the Southern District of Texas, McAllen Division, for further proceedings and disposition.

Respectfully submitted,

By:  */s/ Eddy De Los Santos*
**Eddy De Los Santos**
Texas Bar No. 24040790
Federal ID No. 602417
**Katriel Statman**
Texas Bar No. 24093197
Federal ID No. 2513924
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ. P.C.**
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 - Telephone
(713) 650-9701 - Facsimile

*Attorneys for Defendant Great Lakes Insurance SE (formerly known as Great Lakes Reinsurance (UK) SE)*

## CERTIFICATE AND NOTICE OF FILING

I certify that on February 2, 2017, the Notice of Removal was sent to the District Clerk of Hidalgo County, Texas, and that written notice of filing of the Notice of Removal was served via certified mail, return receipt requested, upon the attorney of record for Plaintiff.

*/s/ Katriel Statman*
Katriel Statman

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on February 2, 2017, the foregoing Notice of Removal was served on counsel for Plaintiff via Certified Mail, Return Receipt Requested, pursuant to the Federal Rules of Civil Procedure.

Kevin S. Baker
Courtney Potter
KETTERMAN ROWLAND & WESTLUND
16500 San Pedro, Suite 302
San Antonio, Texas  78232
**CM/RRR:  7014 3490 0000 9066 5723**

*/s/ Katriel Statman*
Katriel Statman